UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MENDEZ HOLLIDAY,

               Plaintiff,               Case No. 1:25-cv-391

v.                                      Hon. Paul L. Maloney

VILLAGE OF PAW PAW,
PAW PAW POLICE DEPARTMENT,
and SAM CARLSEN,

               Defendants.

_____/

**REPORT AND RECOMMENDATION**

*Pro se* plaintiff Mendez Holliday filed this civil rights action pursuant to 42 U.S.C.

§ 1983 against defendants Village of Paw Paw, Paw Paw Police Department, and Officer (Lt.)

Sam Carlsen.  This matter is now before the Court on defendants' motion to dismiss pursuant to

Fed. R. Civ. P. 12(b)(6) (ECF No. 8).  The motion is unopposed.

        **I.**        **The complaint**

Plaintiff filed a form complaint to which he attached a one-page complaint (ECF

No. 1, PageID.6):

> On February 21, 2025, I, Mendez Holliday, a licensed Health Benefit Agent, was at the home of my elderly client Otis Belin, who is also Black, in Paw Paw, Michigan.  Upon arrival, I encountered Officer Sam Carlsen responding to a domestic call.  Despite my professional identification and explanation of my legitimate presence, Officer Carlsen immediately demonstrated racial bias in his approach toward me.
>
> I was carrying a machete that belonged to Otis, which I was returning to him. The machete, which I intended to use for personal bushcraft activities, was property sheathed and posed no threat. Officer Carlsen focused exclusively on me rather than properly investigating the domestic situation. Officer Carlsen disregarded my explanation about both my professional role and the purpose of the

machete, ignoring my credentials.  Instead, he treated me with immediate suspicion and hostility, demonstrating a pattern of discriminatory treatment toward Black individuals. This racial bias was evident in his decision to arrest me – a Black professional – while failing to properly address the domestic situation involving my elderly Black client.

Upon arrival at the Van Buren County Jail, jail staff observed that I was sweating and appeared 'excited'; which was a natural response to the stress of being wrongfully arrested and subjected to racially biased treatment. The jail staff then demanded I receive medical clearance at a hospital.

Prior to this, I had clearly expressed to officers that I did not want certain personnel at the jail to touch me, exercising my right to bodily autonomy.  Despite being in handcuffs and posing no threat, my request was ignored. After I refused medical services at the jail – which was my constitutional right – I was told I must go to the hospital for clearance.

I specifically begged not to be transported by Officer Carlsen, as I did not feel safe in his custody due to his previous discriminatory treatment. I  repeatedly requested a supervisor or different officer for transport, explaining my fear for my safety.  These reasonable requests were denied.  Instead of accommodating my legitimate safety concerns, I was forced to ride with Officer Carlsen to the hospital against my will.

At the hospital, I continued to exercise my legal right to refuse medical treatment.  Rather than respecting this right, officers forcibly removed me from the vehicle.  Throughout his entire process, my constitutional rights to equal protection, to refuse medical treatment, to be free from unreasonable seizure. and to have my legitimate safety concerns addressed were repeatedly violated.  The Paw Paw Police Department and Van Buren County Jail demonstrated deliberate indifference to my clearly established rights and subjected me to discriminatory treatment based on my race from the initial encounter through the entire detention process.

Compl. (ECF No. 1, PageID.6).  Plaintiff seeks $1,000,000.00 in damages, injunctive relief, and "a federal investigation into the pattern of misconduct within the Paw Paw Police Department." *Id*.

## II.      Plaintiff did not oppose the motion to dismiss

Plaintiff's failure to file a response to defendants' motion to dismiss is fatal to his position.  This failure is both a forfeiture of his claim and a waiver of opposition to the relief sought

in the motion.  *See Notredan, L.L.C. v. Old Republic Exchange Facilitator Co.*, 531 Fed. Appx. 567, 569 (6th Cir. 2013) (the plaintiff's failure to respond to a motion to dismiss its claim amounts to a forfeiture of that claim).  *See also, Scott v. Tennessee*, 878 F.2d 382 (6th Cir. 1989) (affirming district court's grant of the defendant's unopposed motion to dismiss, noting that "if a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion"); *Humphrey v. U.S. Attorney General's Office*, 279 Fed. Appx. 328, 331 (6th Cir. 2008) (same); *Thorn v. Medtronic Sofamor Danek, USA, Inc.*, 81 F. Supp. 3d 619, 631-32 (W.D. Mich. 2015) (granting defendant's motion to dismiss where "Plaintiff fatally provides no opposition to Defendants' arguments") (citing *Scott*, *Notredan*, and *Humphrey*).  For this reason alone, defendants' motion to dismiss should be granted.

### III.    Motion to dismiss

Defendants have moved to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(6) because it fails to state a claim upon which relief may be granted.  A complaint may be dismissed for failure to state a claim if it fails to give the defendants a fair notice of the claim and the grounds upon which it rests.  *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007).

> [A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)  (internal citations and quotation marks omitted).  In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true.  *Morgan v. Church's Fried Chicken*,

829 F.2d 10, 12 (6th Cir. 1987).  While *pro se* pleadings are to be liberally construed, *see Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), "this court is not required to conjure up unpled allegations."  *Dietz v. Sanders*, 100 Fed. Appx. 334, 338 (6th Cir. 2004).  Thus, "an unadorned, the - defendant - unlawfully - harmed - me accusation" is insufficient to state a claim for relief. *See Iqbal*, 556 U.S. at 678.

### IV.    Discussion

Plaintiff's complaint fails to allege sufficient facts to state a claim for relief that is plausible on its face.  Plaintiff sets out somewhat cryptic and conclusory allegations indicating: that on February 21, 2025 he was carrying a machete; that he was arrested; that he did not want to be touched; that he refused medical treatment at the jail; that he did not feel safe due to defendant Carlsen's "previous discriminatory treatment"; and that defendant Paw Paw Police Department and the non-party Van Buren County Jail demonstrated deliberate indifference to his constitutional rights and subjected him to discriminatory treatment based on race.  While he does not allege any wrongful  actions committed by defendant Village of Paw Paw, plaintiff seeks $250,000.00 from the Village "for their failure to properly train and supervise Officer Carlsen."  Compl. at PageID.6. Taken as a whole, plaintiff's allegations consist of nothing more than "unadorned, the – defendant[s] - unlawfully - harmed - me accusation[s]" which are insufficient to state a claim for relief.  *See Iqbal*, 556 U.S. at 678.

In this regard, while plaintiff refers to constitutional violations, he fails to allege a plausible clam against defendants.  Section 1983 "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law."  *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of

rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983. Here, plaintiff's complaint references a Fourteenth Amendment equal protection claim (racial bias or race discrimination). Plaintiff also indicates a Fourteenth Amendment due process claim (deliberate indifference to a medical need for a detainee) and a Fourth Amendment claim (unreasonable seizure).

Plaintiff has failed to allege any facts to state plausible constitutional claims. With respect to the equal protection claim, plaintiff has not alleged that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *See* V*illage of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). As discussed, Lt. Carlsen was responding to a "domestic call" when he encountered plaintiff carrying a machete. Carlsen apparently responded to that threat by taking plaintiff into custody. With respect to the medical claim, plaintiff has not alleged that Lt. Carlsen was deliberately indifferent to his serious medical needs. *See Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004). Rather, plaintiff complains that Carlsen tried to *provide* him with medical treatment, *i.e.*, Carlsen took plaintiff to the hospital to be examined for a medical clearance. With respect to the seizure, plaintiff has not alleged facts to show that Carlsen engaged in an "unreasonable" seizure. *See generally, Cupp v. Murphy*, 412 U.S. 291, 294 (1973). As discussed, Carlsen was responding to a domestic call, encountered plaintiff carrying a machete, and detained him.

Finally, under *Monell v. New York City Department of Social Services*, 436 U.S. 658, 690-91 (1978), plaintiff's § 1983 claims against the Paw Paw Police Department and the Village of Paw Paw are limited to whether their official policies or customs caused his injuries.

Plaintiff's conclusory complaint has not alleged any facts to support such a claim against either the Police Department or the Village.

### V.    The video

Defendants' motion to dismiss included a copy of Lt. Carlsen's bodycam video (ECF No. 9).  Fed. R. Civ. P. 12(d) addresses the result of presenting matters outside of the pleadings, stating that,

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

The Sixth Circuit has determined that under certain circumstances, a court may review video evidence without treating the motion as one for summary judgment:

> In qualified-immunity cases, we've previously considered videos at the motion-to-dismiss stage. *See, e.g., Bailey v. City of Ann Arbor*, 860 F.3d 382, 387 (6th Cir. 2017). And for good reason. Qualified immunity isn't just a defense to liability—it's immunity from the costs and burdens of suit in the first place. *Scott v. Harris*, 550 U.S. 372, 376 n.2, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007); *Pearson v. Callahan*, 555 U.S. 223, 237, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). If officers are entitled to qualified immunity and don't receive it at the earliest possible stage, then they lose its protections for as long as they continue to litigate. *Crawford v. Tilley*, 15 F.4th 752, 763 (6th Cir. 2021) (highlighting the importance of applying qualified immunity even before discovery); *see Scott*, 550 U.S. at 376 n.2, 127 S.Ct. 1769. So when uncontroverted video evidence easily resolves a case, we honor qualified immunity's principles by considering the videos. Plus, the videos here are already in the record. Indeed, the plaintiff's complaint implicitly relies on the videos by recounting facts that could only be known to him by watching the videos. Thus, it makes little sense to waste time and effort by ignoring the videos' contents. *See Pearson*, 555 U.S. at 237, 129 S.Ct. 808.
>
> That said, our use of the videos is limited at this stage. If there is a factual dispute between the parties, we can only rely on the videos over the complaint to the degree the videos are clear and "blatantly contradict[ ]" or "utterly discredit[ ]" the plaintiff's version of events. *Scott*, 550 U.S. at 380, 127 S.Ct. 1769. Otherwise, we must accept the plaintiff's version as true. *Id*. This all makes sense—if the indisputable video evidence contradicts [the plaintiff's] pleadings, his allegations are implausible. *Bailey*, 860 F.3d at 387.

*Bell v. City of Southfield, Michigan*, 37 F.4th 362, 364 (6th Cir. 2022).

Here, the Court will not consider the bodycam video as part of the motion to dismiss. This Court reviews surveillance video, dashcam video, and bodycam video in resolving motions for summary judgment on a regular basis.  It is conceivable that the Court would consider a short video on a motion to dismiss which clearly showed that a plaintiff's allegation of specific wrongful conduct was blatantly false.  However, this is not such a case.  Plaintiff filed a one-page complaint which fails to state a claim for relief.  In turn, defendants submitted about 3 1/2 hours of video which chronicle plaintiff's interaction with officers throughout the day.  Reviewing such a large amount of video evidence will not "easily resolve" this case.

### VI.    Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motion to dismiss (ECF No. 8) be **GRANTED** and that this case be **DISMISSED**.

Dated: February 18, 2026                    /s/ Ray Kent
                                            RAY KENT
                                            United States Magistrate Judge

**ANY OBJECTIONS** to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).